UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
LIDIA VAZQUEZ,

                         Plaintiff,

                                                                    **COMPLAINT**

         -against-
                                                                    **ECF CASE**

                                                                    **JURY TRIAL**
                                                                    **DEMANDED**

CLARINS   U.S.A.,   INC.,   COLEEN   SINISI,
Individually and in her Official Capacity, JAN
COHEN Individually and in her Official Capacity,
FRANS   SAINTLOUIS,   Individually   and   in   his
Official Capacity,

                         Defendants.
-----------------------------------------------------------------X

         Plaintiff LIDIA VAZQUEZ ("plaintiff" or "Ms. Vazquez") by and through her

attorneys, COHEN & FITCH LLP, alleges against Defendants CLARINS U.S.A., INC.

("defendant Clarins" or "Clarins"), COLEEN SINISI ("defendant Sinisi"), JAN COHEN

("defendant Cohen") and FRANS SAINTLOUIS ("defendant SaintLouis") as follows:

## NATURE OF THE ACTION

         1.    To recover money damages for mental anguish, pain and suffering,

monetary damages, and related damages incurred by and on behalf of Ms. Vazquez

against defendant Clarins, its agents, servants, employees, and/or licensees, and

defendants Sinisi, Cohen, and SaintLouis in their individual and their official capacities

for their violation of 29 U.S.C. § 2601 *et seq.* ("FMLA"); the New York State Human

Rights Law, Executive Law § 290 *et seq.* ("Human Rights Law" or "NYSHRL"); the

Administrative Code of the City of New York § 8-101 *et seq.* ("City Law" or

"NYCHRL"); the New York Labor Law ("NYLL"), and the Fair Labor Standards Act ("FLSA").

2.      Based upon the following acts and/or omissions, defendants knowingly violated Ms. Vazquez's rights under federal, state, and city laws, and such actions were committed intentionally and/or willfully, with knowledge that plaintiff would be economically injured:

> a)      Defendants refused to grant Ms. Vazquez a reasonable accommodation for her disability, in violation of the Human Rights Law, and City Law; and,
>
> b)      Defendants failed to engage in the interactive process to determine a reasonable accommodation for her disability; and,
>
> c)      Defendants knowingly and intentionally retaliated against plaintiff for asserting and/or attempting to assert her rights under Human Rights Law, and City Law; and,
>
> d)      Defendants knowingly and intentionally retaliated against plaintiff for exercising her rights under the Family Medical Leave Act ("FMLA"); and,
>
> e)      Defendants knowingly and intentionally interfered with plaintiff's FMLA rights; and,
>
> f)      Defendants knowingly discriminated against plaintiff due to her medical disability, in violation of the Human Rights Law, and City Law; and,

g)      Defendants knowingly discriminated against plaintiff due to her

sexual orientation, in violation of the Human Rights Law, and City Law;

and,

h)      Defendants failed to promptly and timely pay her earned wages

pursuant to NYLL § 191(1)(c) and the Fair Labor Standards Act

("FLSA").

3.      Damages and other legal relief are sought pursuant to the FMLA, Human

Rights Law, City Law, the FLSA, and the New York Labor Law.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331

(original federal question jurisdiction).

5.      This Court has supplemental jurisdiction over Ms. Vazquez's New York

Labor Law, Human Rights Law and City Law claims conferred by 28 U.S.C. § 1367(a),

as such claims are so related in this action within such original jurisdiction that they form

part of the same case or controversy under Article III of the United States Constitution.

6.      Venue is proper in this District because defendants operate in this District,

and acts and/or omissions giving rise to the claims alleged herein took place in this

District.

## DEMAND FOR TRIAL BY JURY

7.      Plaintiff demands a trial by jury.

## PROCEDURAL REQUIREMENTS

8.      Pursuant to §8-502 (c) of the City Law, plaintiff served a copy of this

Complaint on the City of New York Commission on Human Rights and the City of New

York Corporation Counsel.

## **PARTIES**

### *Plaintiff*

9.      Ms. Vazquez is a lesbian woman who is currently a resident of the State and City of New York.

10.      At all times relevant to this complaint, Ms. Vazquez was employed by Clarins as Senior Business Manager and was working at the Clarins counter inside of Bloomingdales Department Store, located at 1000 Third Avenue, New York, NY 10022.

11.      Ms. Vazquez was at all times an "individual" within the meaning of the Human Rights Law, protected from discrimination on the basis of disability and sexual orientation.

12.      Ms. Vazquez was at all times a "person" within the meaning of the City Law, protected from discrimination on the basis of disability and sexual orientation.

13.      Ms. Vazquez was disabled within the meaning of the Human Rights Law, and City Law.

### *Defendants*

14.      Defendant, CLARINS USA, INC., was and is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

15.      At all relevant times, defendant Clarins employed more than one hundred (100) employees.

16.      At all times hereinafter mentioned, the individually named defendants COLEEN SINISI, JAN COHEN, and FRANS SAINTLOUIS were employees of defendant Clarins and were acting under the supervision of defendant Clarins and

according to their official duties.

17.     At all times relevant to this Complaint, defendant COLEEN SINISI was
and is an Account Executive at Clarins and Ms. Vazquez's direct supervisor.

18.     At all times relevant to this Complaint, defendant JAN COHEN was Vice
President Sales, Northeast & Mid Atlantic at Clarins, and also was in charge of
supervising Ms. Vazquez.

19.     At all times relevant to this Complaint, defendant SAINTLOUIS was the
Benefits Manager at Clarins and was in charge of handling Ms. Vazquez's employment
requests as they pertained to her disability.

20.     Each and all of the acts of the individually named defendants alleged
herein were done by said defendants while acting within the scope of their employment
by defendant Clarins.

21.     Each and all of the acts of the defendants alleged herein were done by said
defendants while acting in furtherance of their employment by defendant Clarins.

22.     At all relevant times, defendants controlled the terms and conditions of
plaintiff's employment and were and are "employer(s)" within the meaning of the
NYSHRL, NYCHRL, NYLL, FMLA, and the FLSA.

## FACTUAL ALLEGATIONS

### *Plaintiff's Stellar Work History at Clarins*

23.     Ms. Vazquez began her employment with Clarins sometime in April of
2010.

24.     At all times during her employment, Ms. Vazquez was an exceptional
employee, who always received excellent performance reviews and was recommended

for promotion multiple times.

25.     In fact, Ms. Vazquez began her employment with Clarins as a Beauty Advisor in 2010 and in 2013 was promoted to Acting Manager, and then eventually was promoted to Business Manager in 2015.

26.     Thereafter, Ms. Vazquez was again promoted in 2016 to Business Training Manager and was promoted again in 2018 to Senior Business Manager.

## *Plaintiff Is Diagnosed with Cancer*

27.     Unfortunately, in or around October of 2019, Ms. Vazquez was diagnosed with cancer.

28.     As a result, Ms. Vasquez was required to take time off from her work at Clarins to have surgeries and receive chemotherapy to treat her illness.

29.     Ms. Vazquez applied for FMLA leave and worked with defendant SaintLouis to ensure she was compliant with Clarin's disability leave policy.

30.     Over the course of approximately eleven (11) months, between October 2019 and September 2020, Ms. Vazquez did her best to balance work and treat her illness.

31.     Ms. Vazquez was out on FMLA and disability leave for the majority of that eleven (11) month period but she came back to work between treatments on a part-time basis from approximately March 2020 until approximately August 2020.

32.     Moreover, Ms. Vazquez felt as if she had no choice but to return to work part-time between March 2020 and August 2020 despite the fact she was still treating and recovering from her illness, as defendant SaintLouis had advised that while she could remain on unpaid leave, the Company was considering eliminating her position because

they needed a manager assigned to one of their large accounts.

***Clarins Refuses to Accommodate Plaintiff***

33.    It was not until early September of 2020 that Ms. Vazquez was cleared by her doctors to return to work with an accommodation.

34.    Specifically, Ms. Vazquez's doctors wrote her a medical note stating that she could return to work, but must refrain from heavy lifting, pushing, and pulling until at least September 28, 2020.

35.    Eager to return to work, Ms. Vazquez sent defendant Frans SaintLouis the doctor's note and requested to return to work in early September of 2020.

36.    In response, defendant SaintLouis wrote Ms. Vazquez an email on September 2, 2020 stating, "[a]fter all reviews, the Company ***cannot accommodate your current restrictions***. Due to a lack of staff, managers at your work location must be able to handle all tasks including heavy lifting, pushing, and pulling." (emphasis added).

37.    Defendant SaintLouis's email continued, "[b]ased on the medical note, we suggest that you continue to stay on disability until September 28, 2020, the date at which you will be able to resume your work with no restrictions."

38.    At no point during this email or anytime thereafter did, defendant SaintLouis, or any other employees of Clarins attempt to engage plaintiff in the interactive process to determine whether her reasonable request for an accommodation was feasible.

39.    On the contrary, Ms. Vazquez's request for an accommodation was rejected outright in clear contravention of the law.

40.    Moreover, during this period, as a result of defendants' outright refusal to

allow Ms. Vazquez to work with the most reasonable of accommodations, Ms. Vazquez was forced to use her paid time off ("PTO") as she had already exhausted all of her paid FLMA leave.

### *Clarins Retaliation Campaign*

41.     As a result of Clarins' refusal to even entertain any type of accommodation, Ms. Vazquez did not return to work until September 28, 2020.

42.     Almost immediately upon her return, it became clear that Ms. Vazquez was being targeted by her supervisors for termination.

43.     Indeed, the very next day following her return to work after having survived cancer, she was put on a Performance Improvement Plan (PIP) by her supervisor defendant Coleen Sinisi for alleged work violations that had occurred in the Spring of 2020.

44.     These alleged work violations occurred at a time when Ms. Vazquez was undergoing treatment for her cancer and appear to be very minor even if they had occurred.

45.     Nonetheless, these minor violations, which other employees had also committed, became the basis for Ms. Vazquez's performance improvement plan ("PIP").

46.     Moreover, the PIP literally started the day after Ms. Vazquez had been out of work for several months treating her cancer.

47.     Upon information and belief, similarly situated employees who had committed the same or similar violations alleged against Ms. Vazquez had not been put on a PIP.

48.     The timing of this PIP alone indicates the pretextual nature of its

implementation.

49.     In addition to being placed on the PIP, Ms. Vazquez's supervisors almost immediately and purposefully required her to perform the very tasks she had asked to be exempt from in her request for an accommodation.

50.     Specifically, they asked her to bring up heavy items from the stock room, which required her to lift heavy boxes and push a heavy cart full of stock from the basement to the freight elevators, and then into the store.

51.     These were not essential functions of her job and a company the size of Clarins could have easily afforded to have other employees help with those tasks.

52.     It was clear from these acts that Clarins was setting plaintiff up to fail and retaliating against Ms. Vazquez for taking leave and/or requesting an accommodation.

### *Plaintiff's Sexual Orientation Played a Factor in her Ultimate Termination*

53.     In addition to this outright retaliation and harassment by her supervisors due to her disability, Ms. Vazquez came to learn that at some point during her absence on disability leave, defendant Jan Cohen learned that Ms. Vazquez was a lesbian.

54.     Moreover, Ms. Vazquez also learned that defendant Cohen had told her colleagues at work that she believed Ms. Vazquez's sexual orientation was "disgusting" and that Ms. Vazquez was setting a bad example for her children by choosing to live a gay lifestyle.

55.     Upon returning to work, defendant Cohen stopped communicating with Ms. Vazquez altogether.

56.     Prior to her leave of absence, Ms. Vazquez had regular communication with defendant Cohen.

57.     However, after Ms. Vazquez returned to work, and more importantly, after defendant Cohen learned of Ms. Vazquez's sexual orientation, defendant Cohen ignored her emails and texts messages and refused to meet with her, even to discuss her requests for an accommodation, and would specifically schedule her on-site visits on days when Ms. Vazquez was off, in order to avoid any interaction with Ms. Vazquez.

58.     The only communication Ms. Vazquez had with defendant Cohen after returning from medical leave, was when defendant Cohen met with Ms. Vazquez to fire her on November 16, 2020, less than two (2) months after she returned from this leave.

59.     In addition to defendant Cohen's actions and comments, Ms. Vazquez was also told by a sales associate, Ruth Yankovich, that being gay was disgusting and that Ms. Vazquez should consider changing her sexual orientation.

60.     It was clear from these events, that Clarins tolerated and even encouraged an anti-homosexual environment in the workplace, and that Ms. Vazquez's termination was motivated in part by the fact that she was a lesbian.

### *Clarins failed to Pay Plaintiff her Earned Commissions*

61.     On November 16, 2020, Clarins ultimately fired Ms. Vazquez.

62.     At the time of her firing, Ms. Vazquez was owed approximately two thousand dollars ($2,000.00) in commissions, which Clarins never paid to her.

63.     As a result of the forgoing suffered severe emotional damages, and economic damages, including compensatory damages, liquidated damages, punitive damages, costs, and attorneys' fees.

## FIRST CAUSE OF ACTION
### (INTERFERENCE WITH FMLA IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT 29 U.S.C. § 2615)

64.     Plaintiff repeats and re-alleges each and every allegation set forth in the proceeding paragraphs as if set forth fully and at length herein.

65.     Defendants interfered with Ms. Vazquez's right to take medical leave under FMLA § 2615 by imposing a PIP the day she returned from FMLA, refusing to grant her an accommodation for her disability, and advising her while she was on unpaid leave, that the Company was considering eliminating her position, which caused Ms. Vazquez to return to work part-time between March 2020 and August 2020 despite the fact she was still treating and recovering from her illness.

66.     These acts indicated to plaintiff she would no longer be able to take future FMLA leaves, thereby interfering with her rights.

67.     Defendants' violations of Ms. Vazquez's FMLA rights were willful and intentional.

68.     As a result of defendants' actions, plaintiff was fired from her employment with defendants.

69.     As a proximate result of defendants' unlawful acts of interference, plaintiff suffered damages, including compensatory damages, liquidated damages, costs, and attorneys' fees.

## SECOND CAUSE OF ACTION
### (FMLA RETALIATION IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT 29 U.S.C. § 2615)

70.     Plaintiff repeats and re-alleges each and every allegation set forth in the proceeding paragraphs as if set forth fully and at length herein.

71.     Defendants retaliated against Ms. Vazquez for exercising her right to take medical leave under FMLA § 2615 by placing her on a PIP the day she returned to work after her medical leave, by refusing to grant her any type of accommodation whatsoever, and by advising her while she was on unpaid leave, that the Company was considering eliminating her position, which caused Ms. Vazquez to return to work part-time between March 2020 and August 2020 despite the fact she was still treating and recovering from her illness.

72.     Defendants' violations of Ms. Vazquez's FMLA rights were willful and intentional.

73.     As a result of defendants' actions, plaintiff was fired from her employment with defendants.

74.     As a proximate result of defendants' unlawful acts of retaliation, Ms. Vazquez suffered damages, including compensatory damages, liquidated damages, costs, and attorneys' fees.

## NEW YORK STATE CLAIMS

### THIRD CAUSE OF ACTION
**(FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW, EXECUTIVE LAW § 290 *et seq.*)**

75.     Plaintiff repeats and re-alleges each and every allegation set forth in the proceeding paragraphs as if set forth fully and at length herein.

76.     Ms. Vazquez's physical impairment as described in this Complaint constitutes a disability within the meaning of the Human Rights Law. N.Y. Exec. L. § 292(21).

77.     The Human Rights Law provides, "it shall be an unlawful discriminatory

practice for an employer…to refuse to provide reasonable accommodations to the known disabilities of an employee." N.Y. Exec. L. § 296(3)(a).

78.    Defendants willfully and intentionally violated Human Rights Law by failing to accommodate Ms. Vazquez's known disability.

79.    Defendants did not allege or demonstrate an undue hardship and had no business justification to interfere or make difficult plaintiff's access to reasonable accommodations which she needed as a result of her protected disabilities.

80.    As a proximate result of the defendants' unlawful acts, Ms. Vazquez suffered injuries and damages including, but not limited to, pain and suffering, mental anguish, and compensatory damages due to the violation of Ms. Vazquez's Civil Rights by the aforementioned parties.

81.    Further, as a result of the forgoing suffered damages, including compensatory damages, costs, and attorneys' fees.

**FOURTH CAUSE OF ACTION**
**(FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF ADMINISTRATIVE CODE OF THE CITY OF NEW YORK § 8-101 *et seq.*)**

82.    Plaintiff repeats and re-alleges each and every allegation set forth in the proceeding paragraphs as if set forth fully and at length herein.

83.    Ms. Vazquez's physical impairment as described in this Complaint constitutes a disability within the meaning of City Law. N.Y.C. Admin. Code § 8-102(16).

84.    Section 8-107(15)(a) of the City Law requires employers to "make [a] reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is

known or should have been known by the covered entity."

85.     Defendants intentionally and willfully violated City Law Section 8-107, by failing to accommodate Ms. Vazquez's disability.

86.     Defendants did not allege or demonstrate an undue hardship and had no business justification to interfere or make difficult plaintiff's access to reasonable accommodations which she needed as a result of her protected disabilities.

87.     As a proximate result of the defendants' unlawful acts, Ms. Vazquez suffered injuries and damages including, but not limited to, pain and suffering, mental anguish, and compensatory damages due to the violation of Ms. Vazquez's Civil Rights by the aforementioned parties.

88.     Further, as a result of the forgoing suffered damages, including compensatory damages, punitive damages, costs, and attorneys' fees.

## FIFTH CAUSE OF ACTION
### (RETALIATIATORY PERSONNEL ACTION IN VIOLATION OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK § 8-107(7))

89.     Plaintiff repeats and re-alleges each and every allegation set forth in the proceeding paragraphs as if set forth fully and at length herein.

90.     Ms. Vazquez's physical impairment as described in this Complaint constitutes a disability within the meaning of City Law. N.Y.C. Admin. Code § 8-102(16).

91.     Section 8-107(7) of the City Law states that "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified

or assisted in any proceeding under this chapter."

92.     Defendants intentionally and willfully violated City Law Section 8-107 by retaliating against Ms. Vazquez.

93.     As a proximate result of the defendants' unlawful acts, Ms. Vazquez suffered injuries and damages including, but not limited to, pain and suffering, mental anguish, and compensatory damages due to the violation of Ms. Vazquez's Civil Rights by the aforementioned parties.

94.     Further, as a result of the forgoing suffered damages, including compensatory damages, punitive damages, costs, and attorneys' fees.

## SIXTH CAUSE OF ACTION
## (RETALIATORY ACTION IN VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW, EXECUTIVE LAW § 296(3-a)(c))

95.     Plaintiff repeats and re-alleges each and every allegation set forth in the proceeding paragraphs as if set forth fully and at length herein.

96.     Ms. Vazquez's physical impairment as described in this Complaint constitutes a disability within the meaning of Human Rights Law. N.Y. Exec. L. § 292(21).

97.     The Human Rights Law provides, "it shall be an unlawful discriminatory practice for an employer… to discharge or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article." N.Y. Exec. L. § 296(3-a)(c).

98.     Defendants intentionally and willfully violated Human Rights Law when they retaliated against Ms. Vazquez because of her disability. N.Y. Exec. L. § 296.

99.     As a proximate result of defendants' unlawful acts of retaliation, Ms. Vazquez suffered injuries and damages including, but not limited to, pain and suffering, mental anguish, and compensatory damages due to the violation of Ms. Vazquez's Civil Rights by the aforementioned parties.

100.     As a proximate result of the defendants' unlawful acts, Ms. Vazquez suffered injuries and damages including, but not limited to, pain and suffering, mental anguish, and compensatory damages due to the violation of Ms. Vazquez's Civil Rights by the aforementioned parties.

101.     Further, as a result of the forgoing suffered damages, including compensatory damages, costs, and attorneys' fees.

## SEVENTH CAUSE OF ACTION
### (DISABILITY DISCRIMINATION UNDER NYSHRL)

102.     Plaintiff repeats and re-alleges each and every allegation set forth in the proceeding paragraphs as if set forth fully and at length herein.

103.     At all relevant times herein, plaintiff had and continues to have, a disability as defined by the NYSHRL.

104.     Plaintiff is protected by the NYSHRL which prohibits disability discrimination.

105.     Notwithstanding plaintiff's physical disabilities, with reasonable accommodations, plaintiff was able and willing to perform the essential functions of her job as a Senior Business Manager.

106.     Defendants discriminated against plaintiff by refusing to accommodate her disability and then fired her.

107.    Defendants had no legitimate business reason for creating the conditions that caused plaintiff's termination.

108.    Defendants' actions constitute unlawful discrimination on the basis of disability in violation of the NYSHRL.

109.    As a proximate result of the defendants' unlawful acts, Ms. Vazquez suffered injuries and damages including, but not limited to, pain and suffering, mental anguish, and compensatory damages due to the violation of Ms. Vazquez's Civil Rights by the aforementioned parties.

110.    Further, plaintiff suffered damages as a result of defendants' discrimination, including compensatory damages, punitive damages, costs, and attorneys' fees.

## EIGHTH CAUSE OF ACTION
### (DISABILITY DISCRIMINATION UNDER NYCHRL)

111.    Plaintiff repeats and re-alleges each and every allegation set forth in the proceeding paragraphs as if set forth fully and at length herein.

112.    At all relevant times herein, plaintiff had and continues to have, a disability as defined by the NYCHRL.

113.    Plaintiff is protected by the NYCHRL which prohibits disability discrimination.

114.    Notwithstanding plaintiff's physical disabilities, with reasonable accommodations, plaintiff was able and willing to perform the essential functions of her position as Senior Business Manager.

115.    Defendants discriminated against plaintiff by refusing to accommodate her disability and then fired her.

116.    Defendants had no legitimate business reason for creating the conditions that caused plaintiff's termination.

117.    Defendants' actions constitute unlawful discrimination on the basis of disability in violation of the NYCHRL.

118.    As a proximate result of the defendants' unlawful acts, Ms. Vazquez suffered injuries and damages including, but not limited to, pain and suffering, mental anguish, and compensatory damages due to the violation of Ms. Vazquez's Civil Rights by the aforementioned parties.

119.    Further, plaintiff suffered damages as a result of defendants' discrimination, including compensatory damages, punitive damages, costs, and attorneys' fees.

## NINTH CLAIM FOR RELIEF
### (Failure to Pay Timely Wages in Violation of the NYLL and FLSA)

120.    Plaintiff repeats and re-alleges all paragraphs above as though fully set forth herein.

121.    New York State labor law § 191 requires that an employee be paid commission no "later than the last day of the month following the month in which they are earned."

122.    New York State labor law §191 also requires that an employee be paid within five (5) days of termination.

123.    Similarly, the Fair Labor Standards Act (FLSA) requires employers to timely pay employees their earned wages.

124.    At all relevant times, Defendants have been and continue to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for

"commerce," within the meaning of FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have employed, "employee[s]," including Plaintiff.

125.    Defendants owe plaintiff approximately two thousand ($2,000.00) in earned commission and did not paid plaintiff her earned commission after they fired her.

126.    Defendants willfully and intentionally refused to make these payments in violation of the NYLL, FLSA, and supporting Department of Labor Regulations.

127.    As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiff has sustained damages and seeks recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages, and prejudgment interest as provided by NYLL § 663, FLSA, and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## TENTH CLAIM FOR RELIEF
### (Gender-Based Sexual Orientation Discrimination in Violation of the NYCHRL)

128.    Plaintiff repeats and re-alleges all paragraphs above as though fully set forth herein.

129.    The NYCHRL prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's sexual orientation.

130.    Plaintiff is an "employee" within the meaning of the NYCHRL, and Defendants are "employers" under the NYCHRL.

131.    Upon information and belief, defendant Cohen made discriminatory comments regarding plaintiff's sexual orientation once she learned plaintiff was lesbian.

132.    Thereafter, defendant Cohen refused to communicate, engage or interact with plaintiff at all until she ultimately fired her.

133.     Moreover, at least one other employee at defendants' company made discriminatory comments to plaintiff about her sexual orientation, indicating the pervasive anti-homosexual culture that exists at the company.

134.     As a direct and proximate result of defendants' discriminatory conduct, plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of future income, compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

135.     As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests the following relief jointly and severally against all of the defendants:

a.   compensatory damages at an amount to be set a trial;

b.   back pay, prejudgment interest, front pay, liquidated damages, and damages for all employment benefits plaintiff would have received but for the discriminatory and retaliatory acts and practices of defendants;

c.   punitive damages;

d.   reasonable attorneys' fees, costs, and disbursements incurred in this action; and

e.   any other relief that the Court deems just and proper.

Dated: New York, New York
          August 22, 2022

                                         Respectfully submitted,

                                         **COHEN & FITCH LLP**

By:       /S                     
                                         Gerald Cohen
                                         Joshua Fitch
                                         Ilyssa Fuchs
                                         *Attorneys for Plaintiff*
                                         110 E. 59th St., Suite 3200
                                         New York, New York 10022
                                         Phone: (212) 374-9115
                                         Fax: (332) 777-2172